UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ANCELMO SIMEON MENDEZ LOPEZ, *et al*.

Plaintiff,

-against-

**MEMORANDUM AND ORDER**
CV 12-6324(LDW)(AYS)

SETAUKET CAR WASH & DETAIL CENTER, TLCW, INC., KARP ENTREPRISES, INC. STEVEN SAVIANO, AND MARK CHAIT,

Defendants.
-------------------------------------------------------X

**ANNE Y. SHIELDS, Magistrate Judge:**

This is an action alleging violations of Federal and New York State wage and hour laws. The action was commenced on December 12, 2012. Plaintiffs are employees of a car wash known as the Setauket Car Wash and Detail Center ("Setauket Car Wash") which is owned and operated by Defendants Setauket Wash, Inc., TLCW, Inc., (TLCW"), Steven Saviano ("Saviano") and Mark Chait ("Chait").[1] Chait has defaulted and this matter is no longer being defended with respect to him. Individual Defendant Saviano is the principal of the named corporate entities.

Presently before this court is Defendants' motion to quash subpoenas served on Saviano's accountant and bank. The third-party subpoenas at issue seek financial information regarding the named Defendants, as well as information regarding a corporate entity not a defendant herein but alleged to be operating a separate similar business under the control of Saviano. For the reasons set forth below, the motion is granted in part and denied in part. Specifically, the motion is

[1] Named Defendants Karp Enterprises, Inc. and Mark Chait failed to answer and a motion for default was granted.

granted to the extent that it seeks information of the named Defendants and denied with respect to the separate corporate entity that is not a party hereto.

## BACKGROUND

### I. Prior Proceedings

This action was commenced in 2012 by an employee of Setauket Car Wash and was conditionally certified as an FLSA collective action on June 17, 2014. After motion practice and conferences, a second amended complaint (the now-operative pleading) was filed on February 9, 2015. That complaint was filed on behalf of thirteen named Plaintiffs. As in prior pleadings, all named and putative Plaintiffs are alleged to have worked at the Setauket Car Wash. Each is alleged to have been paid less than the wages required by both Federal and State law.

On March 27, 2015, this case was reassigned to this court. At a status conference held on April 14, 2015, the parties discussed voluntary production of financial records as well as the conduct of depositions. Defendants raised the issue of whether or not the Setauket Car Wash was an enterprise with an annual gross volume of sales of at least $500,000 so as to confer FLSA jurisdiction. See 29 U.S.C. § (s)(1)(A)(ii). Defendants offered to voluntarily produce corporate tax returns for the years 2008-2014 in support of this assertion, and depositions of all parties proceeded. At the time of the conference, this Court noted that the District Court had set a trial date of August 2015. With an eye toward completion of all discovery prior to that date, the parties scheduled and took party depositions.

The promised tax returns were produced and, as stated by Defense counsel, those returns show no year in which TLCW (the corporate defendant that operates the Setauket Car Wash) generated an annual revenue of $500,000. Plaintiffs, challenging the veracity of the information revealed in the tax returns, sought additional financial information via service of third party

subpoenas served on Defendants' accountants and bank. Defendants objected to the scope of the subpoenas and moved to quash. This court held a conference to discuss the matter and, as a result of discussions held, the parties were directed to brief the issues of standing to move to quash, as well as the merits of any such motion. The matter is now ripe for decision. [2]

II. The Subpoenas

The subpoenas at issue seek financial information from: (1) an accounting firm known as Berger, Macdonald and Rand ("BMR") and (2) Citibank, where Defendant Saviano is alleged to maintain accounts (collectively the "Subpoenas"). Two subpoenas were served on BMR and one was served on Citibank. The first subpoena served on BMR seeks the production of accounting records with respect to corporate Defendant TLCW. The second BMR subpoena seeks the production of accounting records with respect to a third-party non-defendant. That third party is a corporation known as PSCW, Inc. ("PSCW"). The lone subpoena served on Citibank seeks banking records of individual Defendant Steve Saviano ("Saviano") relating to both TLCW and PSCW.

As noted, PSCW is not a defendant herein, but is alleged to be controlled by Saviano and to be engaged in the same type of business. Specifically, PSCW is alleged to operate a car wash located in Holbrook, New York and doing business under the name "Holbrook Car Wash and Detail Center." The parties submissions make clear that Plaintiffs seek PSCW documents in support of a claim that the sales made by PSCW can be aggregated with those of TLCW to meet the FLSA jurisdictional threshold.

---

[2] In conferences and by letter motions Defendants also moved to quash based upon the argument that Plaintiffs failed to serve notice of all subpoenas prior to service on the third parties. At the April 16, 2015 conference before this court, the parties agreed there was no longer an issue as to notice. Defendant agreed to produce the tax returns referred to above and enforcement of outstanding subpoenas was stayed, pending a decision on the merits.

The specific documents sought by the first subpoena issued to BMR seeks:

- TLCW's financial statements and profit and loss statements;
- all documents reviewed by BMR when preparing TLCW's statements;
- documents evidencing or demonstrating TLCW's annual gross receipts or sales,
- TLCW's federal and state tax returns (presumably already produced);
- TLCW's Withholding, Wage Reporting and Unemployment Return Forms (NYS-45); and
- TLCW's Quarterly Returns

The second subpoena served on BMR seeks the same set of documents described above, but with respect to non-party PSCW – the entity alleged to be controlled by Saviano that operates a car wash not named in this action, but doing business in Holbrook.

As noted, the third subpoena at issue here was served on Citibank (the "Citibank Subpoena"). That subpoena seeks the production of all documents relating to accounts maintained by TLCW, Setauket Car Wash and Saviano, as well as those maintained with respect to PCSW and Holbrook Car Wash and Detail Center.

## DISCUSSION

### I. The Motion to Quash

Defendants oppose all requests for financial records on the ground that they have already produced tax returns and the production of additional information is unnecessary and therefore both burdensome and seeks irrelevant information. The Citibank Subpoena is further opposed on the ground that individual Defendant Saviano maintains a joint account with his spouse and the subpoena seeks confidential information. Defendants oppose all subpoenas seeking formation

regarding PSCW on the additional ground that the records of this non-party corporation have no relevance to the claims raised herein.

Plaintiffs argue that Defendants' production of tax returns cannot limit the scope of discovery and that the financial information sought is relevant to their claims. Specifically, Plaintiffs argue that tax returns are not dispositive as to the veracity of the claim that the receipts of Defendants do not amount to the $500,000 FLSA threshold. Plaintiffs note that this is especially true where, as here, it is clear that Plaintiffs were paid in cash, and evidence of such income is more likely to appear in bank records than on corporate income tax records.

As to the production of PSCW records, Plaintiffs argue that the production of such records is sought so that Plaintiffs may aggregate the finances of the two corporations – the named and unnamed – to allege enterprise liability under the FLSA and satisfy the jurisdictional amount.

After setting forth the applicable legal standard the court will decide the merits of the motion to quash.

II. Legal Principles on Motion to Quash

Rule 45 of the Federal Rules of Civil Procedure allows a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv). The burden is on the party issuing the subpoena to demonstrate that "the information sought is relevant and material to the allegations and claims at issue in the proceedings." Night Hawk Ltd. v. Briarpatch Ltd., No. 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003); see also Salvatore Studios Int'l v. Mako's Inc., No. 01 Civ. 4430, 2001WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001). Relevance "has been construed broadly to encompass any matter

that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir. 1992); Annunziato v. Collecto, Inc., 296 F.R.D. 112, 120 (E.D.N.Y. 2013); Barrett v. City of New York, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable").

Once relevance is demonstrated the burden shifts to the party seeking to quash the subpoena to demonstrate that the subpoena is over-broad, duplicative, or unduly burdensome." Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP, No. 03 Civ. 5560, 2008 WL 4452134, at *4 (S.D.N.Y. 2008); see John Wiley & Sons, Inc. v. Doe Nos. 1-30, 284 F.R.D. 185, 189 (S.D.N.Y. 2012) (burden on motion to quash is borne by the moving party); Ford Motor Credit Co. v. Meehan, No. CV 05-4807, 2008 WL 2746373, at *5 (E.D.N.Y. July 11, 2008) ("The burden of persuasion in a motion to quash a subpoena … is borne by the movant.").

The court has broad latitude to determine the scope of discovery and to manage the discovery process, see, e.g., EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012), and the question of whether to grant or deny a motion to quash is discretionary. John Wiley, 284 F.R.D. 185, 189; see In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 68 (2d Cir. 2003); Solomon v. Nassau County, 274 F.R.D. 455, 460 (E.D.N.Y. 2011); Libaire v. Kaplan, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011).

## III. Disposition of the Motion

### A. Standing

The motion to quash presents a threshold question of standing because the subpoena was issued to Defendants' accountant and to Defendants' bank –not to Defendants. "'A party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right.'" KGK Jewelry LLC v. ESDNetwork, No. 11 Civ. 9236, 2014 WL 1199326, at *3 (S.D.N.Y. Mar. 21, 2014) (quoting Nova Prods., Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y. 2004)).

Defense counsel asserts that he now represents BMR, the third party accountant, and Plaintiffs did not address the issue of standing in their papers. In view of the foregoing and the fact that Saviano has a privacy interest with respect to the information sought by both the BMR and Citibank subpoenas, the Court holds that Defendants have standing to move to quash and turns to consider the merits of the motion. After consideration of documents relating to named Defendant TLCW the court will consider those aimed at the financial records non-party PSCW.

B. TLCW Financial Documents

In support of the claim of relevance of the TLCW documents, Plaintiffs assert that factors other than tax returns are relevant in determining whether the $500,000 threshold is met. See Cheng Mei Lin v. Yeh's Bakery, Inc., No. 12-CV-2146, 2013 WL 867436, at *3 (E.D.N.Y. March 7, 2013). Thus, they argue that the financial information they seek to obtain by way of subpoena is relevant to the determination of whether FSLA threshold amount has been satisfied and should be produced. There is no question but that such information is relevant to the issue of FLSA jurisdiction and discoverable. The court turns then to consider whether Defendants can sustain their burden of showing that the subpoenas which seek relevant information should nonetheless be quashed.

In support of their burden Defendants argue first that since they have produced their tax returns, any subpoena seeking further financial records should be quashed on the grounds of relevance and burden. Defendants characterize tax returns as the gold standard for determining an entity's receipts and that they therefore need not produce what they characterize as less probative documents. While Defendants are correct in their assertion as to the relevance of tax returns, they fail to provide case law substantiating their argument that when tax returns are voluntarily produced, Plaintiffs are precluded from seeking other financial information.

While Defendants rely on Yang Li v. Ya Yi Cheng, No. 10-CV-4664, 2012 WL 1004852, at *5-6 (E.D.N.Y. March 23, 2012), for the proposition that tax returns are dispositive, the case does not support Defendants' position. In Yang Li, the court was addressing Defendants' summary judgment motion. The court noted that the tax returns showed Defendants' grossed less than the $500,000 threshold. Analyzing the case, the court noted that Plaintiffs' motion in opposition to the summary judgment motion attacked the credibility of the tax returns, but offered no evidence to support their assertion. Id. The court therefore granted the defense motion for summary judgment. Far from establishing that financial information outside of produced tax returns is not discoverable, Yang Li actually points to the relevance of such information. Indeed, it was the Yang Li plaintiffs' failure to rebut the tax returns that was fatal to their opposition to summary judgment. Here, by seeking independent financial information outside of the provided tax returns, Plaintiffs are trying to accomplish through the discovery process, what the Yang Li plaintiffs could not, i.e. uncover evidence to attack the veracity of the tax returns. The financial information sought may allow Plaintiffs to establish that the actual gross sales of Setauket Car Wash exceed the amount stated in the produced tax returns. If such information is not uncovered Plaintiffs may indeed find themselves in the same position as the Yang Li plaintiffs. The court

will not however foreclose Plaintiffs from having the opportunity to discover relevant information by granting the motion to quash.

Defendants next argue Plaintiffs are not entitled to the financial information sought via subpoena because Plaintiffs failed to ask Saviano about his finances during deposition, and, thus, should be prohibited from now seeking information regarding the same. Id. at 7-8. The Court disagrees. Defendants have not provided case law which would require Plaintiffs to pursue only limited avenues in collecting discovery. Instead, Defendants cite only to law supporting the proposition that parties must explore less intrusive avenues before the Court will require tax returns to be turned over. Defendants here have already provided tax returns to the Plaintiffs. Thus, their case law is not relevant to the issue presented.

Moreover, Plaintiffs submitted a portion of Saviano's deposition testimony. Instead of proving that Plaintiffs failed to inquire as to Saviano's receipts, the quoted testimony shows that such an inquiry was made and, indeed, lends further support to Plaintiff's showing of relevance. Thus, when Saviano was asked how he knew the daily volume of business at Setauket Car Wash Saviano responded that there was a daily bank deposit. DE 108 at 4. When asked what he gives to the accountants from BMR Saviano responded that he provided the firm with "deposits that are made in the bank or checks that were written." Id. at 5. As to what Saviano did daily paper receipts that might evidence cash transactions Saviano testified, "at the end of the day, I destroy everything. I destroy my credit card receipts. I destroy everything." Id. at 6. Similarly Saviano testified that it is his practice to "review" the summary of the total dollar amount of transactions printed out by the register "and shred it." Id. Far from undermining Plaintiffs' claims of relevance, Saviano's testimony further supports the Court's finding that the financial records sought by the TLCW Subpoenas are indeed relevant to the $500,000 gross receipt issue.

Defendants' final argument regarding TLCW financial information relates to the Citibank Subpoena. Defendants maintain that this subpoena should be quashed on the ground that it seeks Saviano's personal financial records, including banking information with respect to accounts held jointly by Saviano and his wife. Defendants reason that the production of all information subpoenaed from Citibank would lead to the unnecessary disclosure of confidential information regarding Saviano's wife. As a general proposition this argument is unavailing, because, "the confidentiality of personal financial matters must yield to the Federal Rules of Civil Procedure." Conopco, Inc. v. Wein, No. 05-CV-9899, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007) (denying motion to quash subpoena for personal bank records of RICO defendant and her husband); Hackmann v. Auto Owners Ins. Co., No. 2:05-cv-876, 2009 WL 330314, at *2 (S.D. Ohio Feb. 6, 2009) ("that papers are personal, or even confidential, is not grounds for quashing a subpoena"); Laborers' Pension Fund v. Quality Gen. Constr., Inc., No. 02 C 7374, 2004 WL 1151616, at *1 (N.D. Ill. Apr. 2, 2004) (denying motion to quash subpoena for bank records of defendant and wife asserting that subpoena was overbroad for failure "to distinguish between corporate accounts and personal accounts"); see also Eastman Kodak Co. v. Camarata, 238 F.R.D. 372, 376-77 (W.D.N.Y. 2006) (upholding bank subpoenas for individual defendants' "personal" information in RICO case involving allegations of intra-enterprise transfers).

As discussed above, the information sought by Plaintiffs' subpoenas is relevant to establishing the required FSLA amount and is discoverable. The proper way to handle Defendants' concerns relating to the confidential information is to for the parties to agree on a confidentiality order and identify the documents as "Confidential." Allen v. Devine, No. 09-cv-668, 2011 WL 505007, at *2-3 (E.D.N.Y. 2011).

For the foregoing reasons the Court denies the motion to quash the Subpoenas to the extent that they seek information regarding TLCW, Setauket Car Wash and Saviano. Additionally, with respect to the Subpoenas, the Court holds that the information to be produced shall be limited to that information demonstrating or relating to cash receipts of the Setauket Car Wash. With respect to Citibank such information will consist of documents evidencing cash deposits made to accounts controlled by the TLCW, Setauket Car Wash, or Saviano. This limitation should allow for the production only of relevant information that will shed light on the issue of cash receipts and allow Plaintiff to prepare a case, if such a case is supported by proof, showing that the tax returns produced under report the actual annual receipts of the Setauket Car Wash.

C. PSCW Financial Documents

Plaintiffs argue that the PSCW documents are relevant because they will allow them to establish "enterprise coverage." Specifically, Plaintiffs seek to discover information regarding PSCW's financial information so that they may aggregate that non-party's finances with those of TLCW in order to reach the $500,000 FLSA threshold. Defendants argue that Plaintiffs' assertion of relevance is unsupported and interposed so late in the litigation as to be prejudicial.

Plaintiffs' newly minted claim of enterprise liability comes two years into litigating this matter and on the eve of the scheduled trial. While the court recognizes that there is, generally speaking, precedent allowing for the aggregation of the receipts of related entities, the assessment of whether or not the gross receipts of different entities may be aggregated is necessarily fact specific. See, e.g., Boekemeier v. Fourth Universalist Society in City of New York, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000); Locke v. St. Augustine's Episcopal Church, 690 F. Supp. 2d 77, 85 (E.D.N.Y. 2010); Bowrin v. Catholic Guardian Soc., 417 F. Supp. 2d 449,

458 (S.D.N.Y. 2006) (internal quotation marks and citations omitted); Berrezueta v. Royal Crown Pastry Shop, Inc., No. 12 CV 4380, 2014 WL 3734489, at *4-7 (E.D.N.Y. July 28, 2014); see also 29 C.F.R. § 779.221.

This matter has been pending since December of 2012 and is scheduled for trial in August of 2015. Plaintiffs waited until the eve of trial to set forth a new theory to support their FLSA claim of aggregation of receipts. There is little doubt that allowing a new claim of enterprise liability to go forward will necessarily require additional discovery. Among other things the Court envisions a motion to add a new Defendant, motion practice concerning the viability of the aggregation theory, as well as possible certification of a new class and the sending of new notices to opt in to the action. Plaintiff will, in effect, be starting a new action involving a new entity, a procedure that is particularly unfair in this long-pending case.

The Court notes that counsel are scheduled to be before the District Court for a conference on May 20, 2015. In the event that the District Judge allows trial of this matter to be substantially delayed beyond the previously scheduled trial date, the court will consider anew whether to allow Plaintiff to discover information, at this late date, in support of a claim of enterprise liability. In the meantime, the court grants the motion to quash the Subpoenas to the extent that they seek information regarding PSCW. At this point in the proceeding, such subpoenas do not seek information that is relevant and material to the allegations and claims presently at issue and set for trial.

## Conclusion

For the foregoing reasons, Defendants' motion to quash is denied as to the TLCW documents to the extent set forth above, and granted as to the PSCW documents.

SO ORDERED

Dated: Central Islip, New York
May 19, 2015

/s/ Anne Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge